2001 ME 147

**Zbignew J. KURLANSKI**

v.

**PORTLAND YACHT CLUB et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 25, 2001.

Decided: Oct. 26, 2001.

S. James Levis Jr., Esq., John A. Turcotte, Esq., Levis & Hull, P.A., Biddeford, for plaintiffs.

Gary D. Vogel, Esq., Aaron P. Burns, Esq., Lambert, Coffin, Rudman & Hochman, Portland, (for Portland Yacht Club), Amy K. Tchao, Esq., Drummond Woodsum & MacMahon, Portland, (for Town of Falmouth), for defendants.

Panel: WATHEN, C.J.,* CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Zbignew J. Kurlanski and Kathleen M. Kurlanski appeal from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) affirming the Town of Falmouth Planning Board's decision to approve the Portland Yacht Club's site plan for the construction of a building for boat storage and use by the junior sailing program. The Kurlanskis contend that the Planning Board erred in accepting an insufficient application for site plan review, in approving the application without conducting a full site plan review, and in failing adequately to specify the reasons for its decisions. We agree and vacate the decision of the Superior Court with directions to remand the matter to the Town of Falmouth Planning Board for site plan review as required by the applicable ordinance.

## I. BACKGROUND

[¶ 2] The Club property, located in a residential zone at the end of Old Powerhouse Road, has a club house and a parking lot. In March of 1999, the Falmouth Zoning Board of Appeals approved, and we later affirmed, the Club's conditional use request for the "construction of a building . . . that measures 30' x 40' to store small

boats nine months a year and use as classrooms during the summer for the Junior Sailing Program." *Wells v. Portland Yacht Club,* 2001 ME 20, ¶¶ 1–2, 771 A.2d 371, 372–73 (internal quotation marks omitted).

[¶ 3] Pursuant to section 9.1 [1] of the zoning ordinance, the Club requested a hearing before the Planning Board and submitted a letter prior to the hearing that indicated that the site plan review standards should be applied "to the proposed Project located in a corner of the existing parking lot and the associated parking lot revisions and not to the existing Club property as a whole." Because the proposed boathouse would be constructed in the existing parking lot, the Club stated at the hearing that it would reconfigure and paint new stripes on the balance of the parking lot to create several more spaces than it currently has. Although the existing parking lot extends into the side setback, the Club requested that its current grandfathered status be continued because the parking lot predated the ordinance containing the setback requirements. The Club also requested that the minimum aisle width be waived because the aisle width currently in use was adequate. The Club indicated that it was currently using an upper lot for overflow parking that could be paved if necessary. Moreover, the Club did not propose any changes to the driveway,[2] or the parking lot lighting,

---

* Wathen, C.J., participated in the initial conference, but resigned before this opinion was adopted.

1. Section 9.1 provides in pertinent part:

   No building or signs in excess of 20 square feet in area . . . shall be erected or externally enlarged and no area for parking, loading or vehicular service (including driveways giving access thereto) shall be established or substantially changed, unless the property owner has submitted to and

secured approval by the Planning Board of building and site plans . . . .

FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE § 9.1. Section 9.1 contains two exceptions, neither of which applies in this circumstance. *Id.*

2. The ordinance defines driveways as including "any private local or collector streets, as well as entrance roads to any use other than single-family dwelling units." FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE

buffering, or landscaping. The Kurlanskis and other residents raised concerns about the proposed boathouse's effect on, *inter alia,* Old Powerhouse Road, parking, lighting, landscaping, and buffering.

[¶ 4] During the hearing, the Planning Board discussed certain lighting requirements, after which a member stated that the Planning Board chose "not to deal with lighting," and lighting was not in the Planning Board's "purview tonight."

[¶ 5] Regarding the driveway, several Planning Board members stated that it was "not before" them and that "[b]uilding a garage to store boats is not going to increase traffic," even though the Club proposed adding parking spaces. While discussing the ordinance requirements for parking lot aisle widths and setbacks, the Planning Board also discussed whether the parking lot was "on the table" or was "substantially changed" within the meaning of section 9.1, and a member stated that he did not "feel" that the Planning Board needed "to do a site plan review of the parking ...." The Planning Board also indicated that it did not know if it had to consider landscaping. In addition, the Planning Board did not determine whether the site plan submitted by the Club showed, or had to show the "proposed grades and drainage," and "a landscaping plan including locations of proposed plantings and screenings and buffer areas ...." FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE § 9.2(a)(2).

[¶ 6] Despite its ambiguous discussion, the Planning Board approved the site plan "to build a 1200 sq. ft. boathouse and reconfiguration of the parking lot," subject to only two conditions: (1) "The development is to be constructed in accordance with the plans, maps, diagrams, specifications, testimony, and textual submissions

presented to the Board by the applicant" and (2) "Per Section 9.8 of the Zoning and Site Plan Review Ordinance, a waiver is granted on the aisle width." The Superior Court affirmed the Planning Board's decision, and the Kurlanskis filed this appeal.

## II.  DISCUSSION

[¶ 7] "Because the Superior Court acted as an appellate court, we do not review its decision, but we examine directly the operative decision of the municipality." *Logan v. City of Biddeford,* 2001 ME 84, ¶ 7, 772 A.2d 1183, 1185 (internal quotation marks omitted). We review the Planning Board's decision "for abuse of discretion, errors of law, or findings not supported by substantial evidence in the record." *Rockland Plaza Realty Corp. v. City of Rockland,* 2001 ME 81, ¶ 7, 772 A.2d 256, 259.

[¶ 8] The Kurlanskis contend that due to the size of the proposed boathouse, section 9.1 of the ordinance requires the Club to submit the required information and obtain site plan approval of the entire application. They further contend that the Planning Board conducted an insufficient "piecemeal review of selected features" of the site plan by considering the proposed boathouse separate from the rest of the site, thereby approving an application that did not meet the requirements pertaining to setbacks, FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE § 5.5; shoreland zoning, *id.* § 7; landscaping, *id.* §§ 9.7(a), 9.28; parking, *id.* § 9.10; driveways, *id.* §§ 9.14–.21; lighting, *id.* § 9.23; buffering, *id.* § 9.24; environmental considerations, *id.* § 9.32; and site conditions, *id.* § 9.33. The Club contends that the Planning Board correctly interpreted the ordinance because site plan review only

§ 9.14(a).  Thus, Old Powerhouse Road is a      driveway.

applied to the area affected by the proposed boathouse.

■ [¶ 9] The interpretation of the provisions of a zoning ordinance is a question of law that we review de novo. *Rockland Plaza Realty*, ¶ 7, 772 A.2d at 259. " 'The language at issue must be construed reasonably and with regard to both the ordinance's specific object and its general structure.' " *Wells*, ¶ 8, 771 A.2d at 374 (quoting *Lewis v. Town of Rockport*, 1998 ME 144, ¶ 11, 712 A.2d 1047, 1049). We construe an ordinance "to avoid absurd, illogical, or inconsistent results." *Wright v. Town of Kennebunkport*, 1998 ME 184, ¶ 5, 715 A.2d 162, 164 (discussing statutory interpretation).

[¶ 10] The parties do not dispute the applicability of section 9.1, requiring the Club to obtain site plan approval for the proposed boathouse. To have an application reviewed, the ordinance indicates that the "property owner shall submit to the Planning Board," *inter alia*,

> [a] site plan ... *showing the dimensions and area of each lot or plot to be built upon or otherwise used;* the size, shape and location of existing and proposed buildings; *the location and layout of parking areas, all parking spaces and driveways,* proposed grades and drainage, proposed sewer and water facilities and connections; *a landscaping plan including locations of proposed plantings and screenings and buffer areas;* proposed locations of fences, signs and advertising features; and a key map showing the entire project, and its relation to surrounding properties and the existing building thereof.

*Id.* § 9.2(a)(2) (emphasis added). The Club had the burden to establish that it satisfied all of the requirements necessary for approval. *Lentine v. Town of St. George*, 599 A.2d 76, 80 (Me.1991).

■ [¶ 11] Because the ordinance requires that a site plan comply with § 9.2(a)(2) even if the application involves an already developed site, the Planning Board must review the plan in its entirety for compliance with all standards. *See* FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE §§ 9.1 and 9.2. Although the Club applied for site plan approval of a boathouse, the ordinance requires it to submit the necessary documentation to enable the Planning Board to conduct a review of the site in its entirety. *Id.* §§ 9.2(c) (indicating that a party must submit "all supporting documentation" to the Board before the public hearing); 9.3 (stating that the "Planning Board shall ensure that ... [t]he detailed drawings and specifications meet all applicable codes and ordinances" before a site plan is approved); 9.7 ("The following standards shall be utilized by the Planning Board in reviewing proposed site plans including all accessory buildings, structures, signs, and other site features."); 9.8 ("The guidelines and required minimum performance standards in subsections 9.10 through 9.31 shall apply to all site plans.").

[¶ 12] The Planning Board failed adequately to consider and make findings about a number of required site plan elements: the driveway, parking, landscaping, and lighting. For instance, based on the site plan submitted, there is only one light depicted in the parking lot.[3]

---

**3.** Before the hearing, the Club failed to submit plans "for all proposed exterior lighting" that "shall include the location, type of light, radius of illumination, manufacturer's specification sheet and the intensity in footcandles." FALMOUTH, ME, ZONING AND SITE PLAN REVIEW ORDINANCE §§ 9.2(c), 9.23. During the hearing, the Club offered to submit a further plan for lighting that "meets the current standards," but the Planning Board did not accept the offer or make that a condition of site plan approval.

[¶ 13] Although the Falmouth ordinance permits the Planning Board to waive the standards in sections 9.10 through 9.31, the Planning Board expressly waived only the parking lot aisle width standard in section 9.10(b).[4] *Id.* § 9.8 (stating that the standards in sections 9.10 through 9.31 apply to all site plans unless "the Planning Board finds that, due to special circumstances of a particular plan, the application of certain required performance standards are not requisite in the interest of public health, safety, and general welfare, the Planning Board may waive the required standards, subject to appropriate conditions"). The Planning Board did not state whether for site plan approval purposes it accepted as grandfathered any violations of current off-street parking setback provisions, *id.* § 5.5(g),[5] or shoreland zoning provisions, *id.* § 7.[6] The Planning Board made no findings to allow us to determine whether it waived certain requirements for site plan approval or approved the site plan on the Club's demonstration that it satisfied those requirements.

■ [¶ 14] " '[T]he remedy for an agency's failure to act on all matters properly before it or to make sufficient and clear findings of facts is a remand to the agency for findings that permit meaningful judicial review.' " *Christian Fellowship and Renewal Center v. Town of Limington,* 2001 ME 16, ¶ 12, 769 A.2d 834, 838 (quoting *Harrington v. Inhabitants of Town of Kennebunk,* 459 A.2d 557, 561 (Me.1983)); *Wells,* 2001 ME 20, ¶ 10, 771 A.2d at 375 ("[I]f an agency's findings of fact are insufficient to apprise us of the basis of the agency's decision and whether it is supported by substantial evidence, we should usually remand to the agency for further findings of fact.").

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the Planning Board to complete site plan review in accordance with Falmouth's site plan review ordinance.

■

---

**4.** The Club requested that the Planning Board waive the twenty-five foot aisle width in favor of twenty-two feet wide aisles because the Club had substantial experience with the existing parking layout, which generally utilized twenty-two foot wide aisles, and the people who use the parking lot are familiar with the limited space. *See* FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE § 9.10(b). The Planning Board voted to waive the aisle width requirement, and although the Kurlanskis contend that the waiver was improper, there is evidence in the record to support this decision.

**5.** Section 5.5(g) provides that: "In any residential district, parking areas for uses other than single family detached dwellings shall be set back at least twenty-five (25) feet from any property line." FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE § 5.5(g).

We express no opinion as to whether in its site plan review the Planning Board is authorized or required to accept as grandfathered features deviating from the current zoning ordinance.

**6.** "The Shoreland Zone includes and applies only to those land areas ... [w]ithin two hundred and fifty (250) feet, horizontal distance, of the normal high water line of any designated great pond, river, or salt water body ...." FALMOUTH, ME., ZONING AND SITE PLAN REVIEW ORDINANCE § 7.2(a)(1).

The Planning Board did not address whether the shoreland zoning requirements were applicable.