### 2002 ME 27

**WIDEWATERS STILLWATER CO., LLC**

v.

**BANGOR AREA CITIZENS ORGANIZED FOR RESPONSIBLE DEVELOPMENT.**

Supreme Judicial Court of Maine.

Argued: Oct. 10, 2001.
Decided: Feb. 15, 2002.

---

Stephen E.F. Langsdorf, Esq. (orally), Virginia E. Davis, Esq., Joel H. Thompson, Esq., Preti Flaherty Beliveau Pachios & Haley, LLC, Augusta, for plaintiff.

Edward W. Gould, Esq. (orally), James S. Nixon, Esq., Gross, Minsky & Mogul, P.A., Bangor, (for Bacord), Norman S. Heitmann, Esq., John K. Hamer, Esq., City of Bangor, Bangor, for defendants.

Jennifer D. Burns, Esq., Maine Audubon Society, Falmouth, Peter Shelley, Esq., Conservation Law Foundation, Rockland, for amici curiae.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Bangor Area Citizens Organized for Responsible Development (BACORD) appeals from the judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) ordering the City of Bangor Planning Board to grant a site development permit to Widewaters Stillwater Co., LLC. The court held that section 165–114(I) of the City of Bangor Land Development Code was an unconstitutional delegation of legislative authority to the Planning Board and that the Board relied on section 165–114(I) in denying Widewaters' permit application. Widewaters cross-appeals from the judgment granting BACORD permission to intervene as a party-defendant, and Widewaters challenges BACORD's standing.[1] By an evenly divided court, we affirm the Superior Court's determination that BACORD has standing. We vacate the remainder of the Superior Court's judgment and remand the matter to the Planning Board to make factual findings.

## I. BACKGROUND

[¶ 2] Widewaters, a New York real estate developer, submitted to the Bangor Planning Board an application for a site development permit and two conditional use permits to construct a new Wal–Mart in Bangor. The twenty-seven-acre property to be developed for the Wal–Mart store is located at the intersection of Stillwater Avenue and Gilman Road, near the Bangor Mall, in an area zoned as a shopping and personal service district. A retail store, such as a Wal–Mart, is a permitted use in the district. The proposed size of the building is 224,000 square feet. The proposal includes a retail store, retail auto service center, garden center, seasonal outdoor storage and display area, and

---

1. The City of Bangor was the named defendant in the Superior Court action. The City has not participated in this appeal.

parking lot with 985 spaces. The location abuts the Penjajawoc Stream and the Penjajawoc Marsh.

[¶ 3] While its application was pending, Widewaters consulted with the Maine Department of Environmental Protection and the Maine Department of Inland Fisheries and Wildlife regarding those agencies' concerns that the proposed development should be situated more than 250 feet from the Penjajawoc. Widewaters then withdrew its application and submitted a new application for a site development permit and two conditional use permits, with a revised site plan, that included placement of all buildings and parking areas more than 250 feet from the Penjajawoc.

[¶ 4] The Planning Board held a public hearing on March 20, 2001, and heard evidence presented by Widewaters and by members of the public who both supported and opposed the project. Among those opposing the project were BACORD and its members. BACORD is an unincorporated association of people who joined together to protect the Penjajawoc.

[¶ 5] The Board did not make a decision on Widewaters' application at the March public hearing. It continued to receive written comments until its April meeting. At the Board's April meeting, Widewaters' representatives answered questions from Board members, and the representatives were given an opportunity to respond to written comments the Board had received. Following discussion by Board members, the Board voted three to two to deny the site development permit application and voted unanimously to grant the conditional use permits. The Board made no factual findings.

[¶ 6] Following the Board's decision at the April meeting, Widewaters brought a timely complaint in the Superior Court against the City of Bangor pursuant to M.R. Civ. P. 80B and Bangor Land Development Code section 165–11(F)(2).[2] Widewaters sought, among other things, an order declaring Code section 165–114(I) an unconstitutional delegation of legislative power to the Board and an order compelling the Board to grant Widewaters' permit application. BACORD moved to intervene as a party-defendant pursuant to M.R. Civ. P. 24(b), and the Superior Court first provisionally granted BACORD intervenor status. After further argument on whether BACORD members demonstrated particularized injury, the Superior Court determined that BACORD had standing to intervene. The court further held that Code section 165–114(I) was an unconstitutional delegation of legislative authority to the Board and that the subsection was the only basis for the Board's denial of Widewaters' application. The court held that the Board found that Widewaters met all other requirements of the Code, and it remanded the case to the Board "with instructions that it grant Widewaters' site development application."

## II. LACK OF FINDINGS

[¶ 7] In its complaint to the Superior Court, Widewaters raised several claims including the alleged bias of one member of the Board, the lack of substantial evidence to support the Board's decision, and the lack of findings by the Board. The claim upon which Widewaters prevailed in the Superior Court was the unconstitutionality of section 165–114(I) of the Code. That provision requires the Board, when reviewing an application for a land devel-

**2.** Bangor Land Development Code section 165–11(F)(2) provides: "A party may appeal any final action of the Planning Board to Superior Court in accordance with Rule 80B of the Maine Rules of Civil Procedure."

opment project, to consider the "[e]ffect on the scenic or natural beauty of the area or on historic sites or rare and irreplaceable natural areas."[3] Widewaters claimed, and the court found, that section 165–114(I) embodied an unconstitutional delegation of legislative power to the Board. The court concluded that section 165–114(I) suffered from the same constitutional defect as the ordinance at issue in *Kosalka v. Town of Georgetown*, 2000 ME 106, ¶¶ 5, 17, 752 A.2d 183, 185, 187.[4]

[¶ 8] The court also found that section 165–114(I) "was the only basis for the denial of a permit to Widewaters' site development permit application." The administrative record, however, does not support this conclusion.

[¶ 9] The only evidence of the Board's decision in the administrative record is the transcript of the April meeting. The administrative record contains no written decision or findings of fact by the Board. Because the Board made no findings whatsoever, the parties have sought to glean the basis of its decision from the remarks of the individual members found in the transcript of the April Board meeting. Each of the five Board members spoke during that meeting, with each giving his reason for voting for or against the permit.[5] All three members voting against the permit spoke of their concerns about the nature of the Penjajawoc and its unique habitat. One of the three, howev-

er, stated that his single reason for voting against the permit was the location of the detention pond. The member stated he would have voted for the permit if the storm water detention pond was more than 250 feet from the Penjajawoc. Section 165–114(J) of the Code states that when part of any project is within 250 feet of any stream, the Board must consider whether the project "will not adversely affect the shoreline of such body of water." Questions concerning the location of the detention pond were raised at the April hearing, and a representative of Widewaters stated that "a good portion" of the pond was located within 250 feet of the Penjajawoc.

[¶ 10] Although one of the Board members clearly stated that his reason for rejection was the location of the detention pond, the other two members voting in the majority were less direct. One appeared to agree that the location of the detention pond within 250 feet was a problem and that Widewaters had not shown that the project would not adversely affect the Penjajawoc, but he also spoke about the "irreplaceable natural beauty" of the Penjajawoc.

[¶ 11] The lack of findings in this case severely hampers judicial review. The majority of the Board should have stated the basis of the denial of the permit and should have made factual findings underlying the decision. If the basis of the

---

**3.** Section 165–114 provides, in pertinent part: When reviewing any plan(s) for approval of a land development project under this chapter, the Planning Board shall consider the following features and impacts before granting approval and shall determine that the proposed plan is adequate and suitable to fulfill the intents and purpose of this chapter:

....

(I) Effect on scenic or natural beauty of the area or on historic sites or rare and irreplaceable natural areas.

**4.** The Georgetown ordinance required applicants who wanted to construct a campground to demonstrate that it would "conserve natural beauty." We held that this requirement was an unconstitutional delegation of legislative authority because it "is an unmeasurable quality, totally lacking in cognizable, quantitative standards." *Kosalka*, 2000 ME 106, ¶ 17, 752 A.2d at 187.

**5.** In addition, another Board member, who did not vote, also spoke against the permit.

Board's decision was the impact of the proposed development on the "scenic or natural beauty of the area or on historic sites or rare and irreplaceable natural areas," Code § 165–114(I), then we would have to reach the issue of whether that section is unconstitutional. We do not reach constitutional issues when it is unnecessary to do so. *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 19, 769 A.2d 857, 864. Because of the lack of findings by the Board, it is not clear that we must reach this constitutional issue.

[¶ 12] As we said in *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶¶ 14–18, 769 A.2d 834, 838–40, when an administrative board or agency fails to make sufficient and clear findings of fact and such findings are necessary to judicial review, we will remand the matter to the agency or board to make the findings. Although both parties assert facts as though they were found by the Board or state that the Board made certain findings,[6] this is not a case in which the facts are obvious from the record. Our reasons for requiring findings in *Christian Fellowship* are equally applicable here. Those reasons include the statutory requirement to make findings as well as policy concerns. *See* 1 M.R.S.A. § 407(1) (1989); *see also* 30-A M.R.S.A. § 2691(3)(E) (1996). This case has the additional aspect of a constitutional challenge to the Bangor Code. Because findings are necessary for a reviewing court to determine the factual basis for the Board's decision and whether that decision is adequately supported by the evidence, we remand the matter for findings.

The entry is:

Judgment granting intervenor status to BACORD affirmed by an evenly divided court. In all other respects the judgment is vacated and the case is remanded to the Superior Court with instructions to remand to the Bangor Planning Board to issue findings of fact.

RUDMAN, J., with whom SAUFLEY, C.J. and DANA, J. join, concurring.

[¶ 13] Although I concur in the opinion of the Court, I feel constrained to write separately to advise the Bangor Planning Board and other similar boards what we seek when we remand for findings of fact. We have on at least three occasions recently remanded pending cases for findings of fact.[7] We review, in this case, the Planning Board's findings of fact to determine whether those findings are supported by substantial evidence. When a board's findings of fact are insufficient to apprise us of the basis of the Board's decision, it is impossible for us to determine whether that decision is supported by substantial evidence.

[¶ 14] The Bangor Land Development Code contains in section 165–114 the standards to be used by the Planning Board when reviewing any plan for approval of a land development project.[8] The City So-

---

6. For example, in its brief Widewaters asserts as a fact that the detention pond is located 200 feet from the Penjajawoc; in its brief BACORD states that the Board made a factual finding that the proposed project would adversely affect the Penjajawoc. Neither "fact" is supported by the record, nor was either "fact" found by the Board.

7. *Chapel Road Associates, L.L.C. v. Town of Wells*, 2001 ME 178, 787 A.2d 137; *Kurlanski*

*v. Portland Yacht Club*, 2001 ME 147, 782 A.2d 783; and *Christian Fellowship and Renewal Center v. Town of Limington*, 2001 ME 16, 769 A.2d 834.

8. § 165–114. Land development approval standards.

When reviewing any plan(s) for approval of a land development project under this chapter, the Planning Board shall consider

licitor directed the Board to section 165–114 prior to the Board's consideration of Widewaters' application. Before the Board commenced deliberations, the Planning Officer reviewed the approval standards and indicated the conclusion of the Planning staff that Widewaters' site plan met all of the ordinance requirements. The Chair then indicated that he would accept a motion in the affirmative. A

the following features and impacts before granting approval and shall determine that the proposed plan is adequate and suitable to fulfill the intents and purpose of this chapter:

A. If a subdivision, the criteria established under 30–A M.R.S.A. § 4404, as it shall be amended, and the requirements of Article XVIII of this chapter.

B. Location and arrangement of off-street parking and loading areas and their appurtenant drives and turnaround and maneuvering areas.

C. Location and spacing of access drives to the site from any street, including the possible limitation of such access points to joint access and parallel service streets (whether public or private).

D. Stormwater drainage, including any impacts on designated flood-prone areas, floodways (as established under the National Flood Insurance Program), adjacent properties or the city's sanitary and stormwater sewers and drains.

E. Impact of the location of areas of outdoor display and/or storage and location, intensity, type, size and direction of outdoor lighting.

F. Screening and visual impact on adjacent sites.

G. Landscaping of unpaved areas or other treatment of the site. Landscaping shall include, as a minimum, the following:

(1) Such screening and planting specifically required by this chapter.

(2) The installation of elements to physically separate paved (and graveled) areas from open space, yards and required setback areas along property lines.

(3) The treatment of open space, drainageways, slopes, yards and required setback areas along property lines to reduce dust and erosion and to enhance their visual appearance by such means as seeding or placing sods. (Such treatments will include drainage ditches in the public right-of-way where the grading of front yards extends into the right-of-way.)

(4) The additional planting of shrubs and trees beyond that specifically required elsewhere in this chapter to shade and break up extensive building facades, front, side or rear yards of more than 100 feet in length or open space areas of more than 200 square feet in area not used for active recreation or parking lots containing 200 or more vehicles.

(5) The Planning Board shall consider the practicality of preservation of existing tree growth as identified by the site development plan, particularly in the required buffer yard areas and the preservation of specimen trees throughout. Justification for removal of said trees should be limited to provision of access, excessive grade changes and survivability of the trees. In no case are specimen trees in the buffer yards and street right-of-way to be removed without written authorization of the City Engineer.

H. Location of a building insofar as it directly affects any of the features listed above.

I. Effect on the scenic or natural beauty of the area or on historic sites or rare and irreplaceable natural areas.

J. Whenever situated, in whole or in part, within 250 feet of any pond, lake, river, stream or tidal waters, whether any project will not adversely affect the shoreline of such body of water.

K. For site developments needing approval under the provisions of 38 M.R.S.A. §§ 481 through 488, as amended, and which meet the provisions of 38 M.R.S.A. § 489–A, as amended, as structures which may be approved by local municipalities, the following provisions shall apply:

(1) Such project shall meet the standards of 38 M.R.S.A. § 484.

(2) Such project shall meet the requirements of Department of Environmental Protection regulations, Chapters 371, 372, 373, 374, 375, 376, 377 and 500 as they may be amended from time to time, which are adopted for this subsection by reference. [Amended 3–10–1999 by Ord. No. 99–96]

member of the Board then stated, "I so move," which motion was seconded. Each of the Board members then spoke at length, after which the Chair stated, "I think pretty much the decision has been made," denying the Board's approval of the site development plan. The record, however, is devoid of an indication as to which of the standards of section 165–114 a majority of the Board determined were not met.

[¶ 15] We remand to the Bangor Planning Board so that the Board may specifically indicate which of the eleven standards were met and which of the standards were not met. It may well be that when considered separately there are three members of the Board that found the applicant satisfied all eleven standards. Rather than to have considered a blanket motion to approve, to permit effective appellate review, the Board should have voted separately on each of the applicable standards or in some manner indicated which of the standards the applicant satisfied and which the applicant did not. In this manner, a reviewing court can determine whether there is substantial evidence in the record to support the Board's decision.