2001 ME 175

# CONSERVATION LAW FOUNDATION, INC. et al.

v.

# TOWN OF LINCOLNVILLE et al.

Supreme Judicial Court of Maine.

Argued: Dec. 5, 2001.
Decided: Dec. 20, 2001.

---

Carol F. Blasi, Esq., Conservation Law Foundation, Rockland, for plaintiffs.

Terry F. Calderwood, Esq., Gibbons & Calderwood, L.L.P., Camden, for Town of Lincolnville.

Wayne R. Crandall, Esq., Rockland, for Munroe and Nightingale.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Christopher Osgood and the Conservation Law Foundation (CLF) appeal from a judgment of the Superior Court (Waldo County, *Mead, J.*) affirming the Lincolnville Planning Board's decision to approve a subdivision plan. Osgood and CLF argue that 1) the Planning Board's approval was not supported by substantial evidence in the record; 2) the Planning Board's findings of fact were inadequate to support its decision; and 3) the Board's finding that the proposed subdivision conformed with the town's Comprehensive Plan was insufficient and was not supported by substantial evidence in the record. The Developers, Richard Nightingale and James Munroe, cross-appealed asserting that Osgood and CLF lacked standing to challenge the Board's decision and that the town's subdivision ordinance is unconstitutionally vague. Because we affirm the decision of the Superior Court, we do not reach the cross-appeal.

## I. CASE HISTORY

[¶ 2] On June 16, 1998 the Developers submitted an application to the Lincolnville Planning Board for approval of a fourteen lot subdivision of an area of land known as Munroe Field. The field is a fifty-one acre lot located on Route 1 in Lincolnville that gently slopes down from the road to the

shores of Penobscot Bay. The Developers' proposed subdivision would occupy the bottom half of the field and consist of two rows of seven lots to be accessed by a road leading down from Route 1. The proposal calls for the development of twenty-one acres of the fifty-one acre field. Presently, because of the wide open nature of the area, it provides a spectacular view of Penobscot Bay and its outlying islands. The Lincolnville Town Comprehensive Plan acknowledges that "[a]mong Lincolnville's most valuable and important resources are its scenic resources." One of the enumerated goals of the Plan is the protection of the town's scenic views. The view across Munroe Field is one of these viewscapes.

[¶ 3] Section 1(H) of the town's Subdivision Ordinance requires the Planning Board to ensure that any approved subdivision "[w]ill not have an undue adverse affect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas or any public rights for physical or visual access to the shoreline." Lincolnville, Me., Subdivision Ordinance 1(H) (1999). This language is very similar to the state's subdivision legislation. *See* 30–A M.R.S.A. § 4404(8) (1996).

[¶ 4] The Board voted to approve the Developers' preliminary subdivision plan subject to the condition that the Developers create a conservation easement that would adequately protect the view. The Board specifically determined that "[g]iven the unique and significant characteristics of the view from Route 1 over the proposed subdivision project, a conservation easement to protect that view is necessary in order for the subdivision to meet the criteria of Section 1(H) of the Subdivision Ordinance." To satisfy this requirement,

the Developers proposed a view corridor, 250 feet in width, to proceed straight down from Route 1 and end at the row of shorefront houses. The proposed view corridor extends over the length of an access road, but does not extend to the shore of Penobscot Bay. Although the Developers agreed to place height restrictions on any structures located within the easement, they reserved the right to place three street lamps along the road.

[¶ 5] The minutes of numerous Planning Board meetings show that the Board members devoted much time to discussing the Developers' request for subdivision approval. The Board asked the Developers many questions and did not hesitate to express their concerns and expectations regarding the project. Thus, the minutes indicate that these meetings were dynamic and that the Board carefully considered many facets of the project. Although the Board voted to approve the subdivision plan, it did so on the condition that the town vote to accept the easement.[1] The Board ultimately found that the subdivision "will not have an undue adverse effect on the scenic or natural beauty of the area," and also concluded that "[t]he [Developers'] compliance with the condition concerning the conservation easement or view easement mitigates the *undue* adverse effect of the proposed development on the view from Route One overlooking the land of the proposed subdivision toward the ocean." CLF and Osgood appealed to the Superior Court which affirmed the Board's decision. This appeal followed.

## II. DISCUSSION

[¶ 6] When the Superior Court acts in its appellate capacity, we directly

---

1. At oral argument, counsel acknowledged that the town had voted to accept the Developers' proposed view easement.

review the decision of the Planning Board. *Kurlanski v. Portland Yacht Club,* 2001 ME 147, ¶ 7, 782 A.2d 783. The Board's decision is reviewed for "abuse of discretion, errors of law, or findings not supported by substantial evidence in the record." *Id.* (quoting *Rockland Plaza Realty Corp. v. City of Rockland,* 2001 ME 81, ¶ 7, 772 A.2d 256). We have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gorham v. Cape Elizabeth,* 625 A.2d 898, 903 (Me.1993) (quoting *Hrouda v. Town of Hollis,* 568 A.2d 824, 826 (Me.1990)). Furthermore, "[t]he fact that two inconsistent conclusions can be drawn from the evidence does not mean that a Board's finding is unsupported by substantial evidence." *Id.*

[¶ 7] CLF and Osgood argue that the record contained insufficient evidence to support the Planning Board's approval of the subdivision. First, it should be noted, that section 1(H) of Lincolnville's subdivision ordinance requires a subjective analysis. *See Kosalka v. Town of Georgetown,* 2000 ME 106, 752 A.2d 183. Whether a particular development has an "undue adverse effect on the scenic or natural beauty of the area" necessarily depends upon the perspective of the individual making the determination.

[¶ 8] The members of the Lincolnville Planning Board were familiar with the Munroe Field area and visited the site before making their determination. They also reviewed other materials submitted by the Developers such as an artist's renderings of the proposed development, a profile of the project which portrayed the height of the residences in relation to the tree line, and engineering data containing contour lines of the slope of the hill. After much discussion, the Board voted 3–1 that the project satisfied the requirements of section 1(H) of the town's ordinance. Perhaps a Board made up of different individuals would have voted differently. Nonetheless, we are satisfied that there was sufficient evidence in the record to support the Board's decision.

[¶ 9] Although they made no request for findings of fact, CLF and Osgood also argue that the Board's findings were insufficient to support its decision. They contend that the findings were conclusory and failed to explain how the Board reached its decision. Again, the Board found that the proposed subdivision "will not have an undue adverse effect upon the scenic or natural beauty of the area" and that the view corridor would sufficiently mitigate any undue effect caused by the development. Due to the subjective nature of the section 1(H) requirement, it is difficult to envision more adequate findings. The Board members were familiar with the site and the minutes from the Board's meetings reflect much discussion concerning the proposed subdivision. It is clear that the Board fully and conscientiously considered the proposed easement before it made its final decision. We conclude that the Board's findings were adequate.

[¶ 10] Finally, CLF and Osgood argue that the Board's decision is inconsistent with Lincolnville's Comprehensive Plan. The Plan states that "[t]he protection of the significant scenic views in Lincolnville is important to maintaining the town's rural character, identity, and quality of life." Lincolnville, Me., Comprehensive Plan (June 21, 1993). To implement this goal, the Plan calls for the Board to "[e]ncourage and seek scenic easements of high priority views." And that is precisely what the Planning Board did. The record clearly shows that the Board was concerned with and carried out the Plan's policies. As noted above, the Board condi-

tioned its approval on the Developers' conveyance of an appropriate view easement.

The entry is:

Judgment affirmed.