STATE OF MAINE

LINCOLN, ss.

THE LINCOLN HOME
CORPORATION,

Petitioner

v.

THE INHABITANTS OF THE
TOWN OF NEWCASTLE, et al.,

Respondents

CIVIL ACTION
DOCKET NO. AP-02-002
DHM - LIN - 2/27/2004

RECEIVED AND FILED
LINCOLN COUNTY SUPERIOR COURT

FEB 27 2004

SHARON SIMPSON
CLERK

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

MAR 8 2004

This matter is before the court after hearing taking additional evidence on petitioner's Rule 80B complaint "joined with independent basis for relief and declaratory judgment action." The petitioner, a Maine nonprofit corporation, owns a parcel of land and buildings on the west side of Damariscotta River in the Town of Newcastle where it operates an assisted-living facility for elderly persons. In 1999, petitioner submitted to the Town of Newcastle a site plan application for a major expansion to its main facility. While parking facilities were part of the application, they were not in the northerly portion of the premises. During the construction resulting from the site plan approval, a temporary parking area was created in the northerly portion for purposes of storing gravel and parking construction vehicles. Upon completion of the construction, the petitioner spread gravel and continued to use the area as a permanent parking lot. At some point, petitioner became aware that the parking area was subject to the Land Use Ordinance of the Town of Newcastle and in March of 2002 it applied for approval of the parking lot.

The original site approval was an increase of utilization from 24 units to 34 units and three apartments. The Newcastle Planning Board held a hearing on the petitioner's

revised plan to make a permanent parking area in the northerly section of the premises providing for 17 automobiles. At that meeting, it was noted that the revision relating to parking had already been completed on the ground. Minutes reflect "much discussion ensued on changes to the parking." At the meeting, the Board approved all changes except the parking. A motion was made and approved that the Lincoln Home and the Board "work on the parking revisions." At an official meeting of the Newcastle Planning Board on February 18, 2002, the Board considered a request from the petitioner to pave the temporary parking lot increasing parking to 55 spaces which would include 18 in what was part of the lawn in the northerly part of the property. Petitioner argued that the parking area was necessary for safety of its residents, volunteers and visitors. The minutes of the Board reflect that at a previous public hearing the neighbors felt the parking would interfere with the river view and a concern was expressed by the Board chairman as to "whether this area would encroach on the town's designated scenic view." After discussion, the Board agreed to visit the site.

On March 21, 2002, the petitioner modified its request to a 16-stall parking area allegedly to give the petitioner room to install landscape screening between the highway and the parking area. A meeting of the Planning Board was held on March 21, 2002, with a representative of the petitioner present and a full discussion of the proposed parking lot. The Lincoln Home argued that it needed the new parking area because ". . . it needs, genuinely needs, this additional parking area in order to function effectively, safely and profitably." There was considerable discussion with respect to the provision of the Land Use Ordinance relating to a "scenic view" with free discussion between petitioner's representatives and Board members and it was voted 7-0 to deny the parking lot proposal. Under date of April 16, 2002, the chairman of the

Town of Newcastle Planning Board sent a letter to the petitioner comprising its findings of fact and reasons for its decision of denial of the request. The Board determined that the request by the petitioner was for an expansion of a parking area within the "scenic view" as defined in Chapter XIII, Section C, 1(a). The Board further found:

- . . . the parking expansion was a convenience and not a necessary expansion or a required expansion of parking.

- . . . the proposed parking lot in the scenic view to have an adverse effect on the general public use.

- . . . the loss of an anticipated unobstructed view would cause stress on the general public and deteriorate the public welfare.

- . . . the proposed expansion did not reduce to the greatest extent any adverse effect of the public scenic view.

- . . . a substantial disruption or interference with the usual site lines from the area of general public use or viewing of the scenic view.

- . . . the proposed project created an unnecessary adverse effect on a scenic view and that there are other practicable alternatives to the proposed project.

This letter was approved by the Board at its meeting of April 18, 2002, prior to submission to the Lincoln Home. The denial was appealed to the Newcastle Board of Appeals. The application to the Board of Appeals is styled as a "variance" and requests that the Board of Appeals hold a hearing, conduct a view of the site and reverse the decision of the Planning Board.

A meeting of the Newcastle Board of Appeals was held on June 24, 2002. The quality of the tape recording utilized for the minutes is such that it provides no useful information. However, it appears from a portion of the recording that the Board voted that "the incumbent did not meet the requirements in the Ordinance." On June 4, 2002,

the chairman of the Appeals Board executed a form entitled, "Action Taken by Appeals Board" indicating that the request had been denied and with the following further language:

> This is to inform you that the Board of Appeals has acted on your administrative appeal/request as follows:
>
> FINDINGS OF FACT: The Decision by the Planning Board is not clearly contrary to specific provisions the Ordinance. There is no mistake of fact or law nor was there a misinterpretation of terms or intent of the Ordinance.
>
> CONCLUSIONS: Appellant has not met the requirements of the Ordinance for reversal of the Planning Board Decision of 4/16/2002.
>
> DECISION: Based on the above the appeal of the Lincoln Home is denied.

The Newcastle Land Use Ordinance was enacted March 27, 2001, in its present form. The original Ordinance was effected on its adoption on March 31, 1997, with the exception of shoreland zoning requiring approval under statutory methods. Its purpose is as stated:

> The purpose of this Ordinance is to protect and promote the public health, safety, and general welfare by directing and regulating development of the Town. The directions, controls and limitations established in this Ordinance are necessary to ensure orderly, beneficial and environmentally sound change while conserving the traditional character of the Town and appropriate uses within specific areas of the Town. After extensive review and consideration, this Ordinance is intended to fully implement the Newcastle Comprehensive Plan adopted in 1991.

It was the uncontroverted testimony of the chairman of the Newcastle Planning Board that the Land Use Ordinance was first enacted at the spring Town Meeting in 1995 or 1996 by secret ballot. The chairman further testified that there is a section of the Comprehensive Plan that deals with "conservation of scenic views." He further

testified and it appears undisputed that one of the goals listed in the Comprehensive Plan is to "preserve scenic resources in Newcastle."[1]

Chapter XIII is entitled "General Standards of Performance." Paragraph B is entitled "Findings" which reads:

> A board shall approve an application or approve it with conditions if it makes a positive finding based on the information presented that the proposed use or structure.
>
> * * * *
>
> 5. Will conserve shore cover and visual, as well as actual, points of access to inland and coastal waters;
>
> * * * *

Section C of the Chapter is entitled "Scenic Views." Because its language is at issue, it is quoted in its entirety:

> In considering the issuing of a permit or approval under this ordinance, or approving any plan, plat or use, the decision-maker must consider and reduce to the greatest extent practicable any adverse effect on the public's scenic view.
>
> 1. The following views and areas are designated as special views requiring preservation and enhancement to the greatest extent possible:
>
> a. The view from U.S. Route 1, the main exit ramp and the River Road across the Damariscotta River to the Town of Damariscotta.
>
> * * * *
>
> 2. Prior to issuing a building permit or other permit or approval that may adversely affect a scenic view, particularly of a designated special view, the CEO shall notify the planning board and allow reasonable time for their review of the application. The planning board may determine if there is unnecessary adverse effect on a scenic view and direct the CEO to issue or deny the permit or approval.
>
> 3. A substantial disruption or interference with the usual sight lines from the area of general public use or viewing of the scenic view is an adverse effect sufficient to support denial, if in the opinion of the Planning Board:

---

[1] By law, an ordinance that is contrary to the municipality's comprehensive plan is not enforceable. It was further agreed by parties at hearing that the Newcastle Zoning Ordinance is consistent with the Comprehensive Plan.

a. The scenic view is a designated special view or another equally valuable view to the general public;

b. There are other practicable alternatives to the proposed structure or use that would minimize or eliminate the adverse effect; and

c. Balancing all issues, denial is in the best interests of the Town.

The petitioner complains that the Board of Appeals' Decision, based upon the Planning Board Decision, did not meet the requirements of the Land Use Ordinance standards of performance. It further argues that the town scenic view ordinance provisions are unconstitutionally vague on their face and/or as applied and result in an unconstitutional delegation of legislative authority. Finally, they contend that the Decision of the Planning Board is arbitrary, capricious, an abuse of discretion, based upon findings not supported by substantial evidence in the record and contained errors of law.

Preliminarily, the Lincoln Home argues that the Newcastle Land Use Ordinance in conjunction with state law on the subject required the Newcastle Board of Appeals to provide a *de novo* hearing of its application rather than an appellate review. It argues that the appellate review precluded the petitioner from presenting further evidence to support its appeal. It further argues that because the transcript of the Board hearing was useless because of technical difficulties, petitioner was denied an opportunity to provide the court with an appropriate record. Unless a municipal ordinance explicitly directs otherwise, a zoning board of appeals must conduct a hearing *de novo*. When a board holds such a hearing *de novo*, it does not examine evidence presented to the planning board nor does it review the procedures except to assure that the matter is properly before it. Instead, it looks at the substantive issues anew, makes its own creditability determination, evaluates the evidence presented and draws its own

conclusions. Therefore, in the absence of ordinance language otherwise, the function of the Board is to take evidence, make factual findings, apply the laws and ordinance to the matter at issue and to do so independently of the decision, if any, of the planning board. *Stewart v. Town of Sedgwick,* 2000 ME 157, 757 A.2d 773, citing Title 30-A M.R.S.A. § 2691.

Chapter XIV, Administration, of the Newcastle Land Use Ordinance, contains a section I, Appeals.

> 1.    The Board of Appeals may hear and decide appeals by an aggrieved party, where it is alleged that there is an error in any order, requirement, decision, or determination made by, or failure to act by, the Code Enforcement Officer, Planning Board or other Board in the administration of this Ordinance.

* * * *

> c.    Upon being notified of an appeal, the original authority shall transmit to the Board of Appeals all of the papers constituting the record of the decision appealed from.

> d.    If an appeal is filed, the original authority shall submit in writing to the Board a statement of Findings of Fact and Reasons for the decision, order or failure to act. The Board may reverse the decision only if it finds a mistake of fact or law or a misinterpretation of the terms or intent of this Ordinance. If the Board reverses the decision, order to failure to act, it shall, in writing, record its findings and reasons for doing so.

> e.    The Board of Appeals shall hold a public hearing on the appeal within thirty (30) days of its receipt of an appeal.

> 2.    . . .

> a.    The Board may reverse the decision, or failure to act, of the Code Enforcement Officer or Planning Board only upon a finding that the decision, or failure to act, was clearly contrary to specific provisions of this Ordinance.

This court is satisfied, and so stated at its hearing, that the language limiting the Board of Appeals to reverse a decision of a planning board, "only upon a finding that the decision . . . was clearly contrary to the specific provisions of this Ordinance" clearly

mandates a review or appeal by the Board of Appeals of a "decision" of the Planning Board. Furthermore, as noted, it is a mandate that the Planning Board transmit to the Board of Appeals all of the papers constituting the record of the decision "appealed from." Therefore, this court finds clear that the requirement that the Board of Zoning Appeals has before it the entire record of the Planning Board along with its mandate to rule upon the decision of the Planning Board clearly and explicitly called for an appellate review by the Board of Zoning Appeals of the Planning Board decision.

Petitioner argues that the scenic view provision of the Land Use Ordinance is facially vague and vague as applied in this case. It cites to *Town of Baldwin v. Carter*, 2002 ME 52, 794 A.2d 62; *Wakelin v. Town of Yarmouth*, 523 A.2d 575; *Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d 50; and most strongly, *Kosalka v. Town of Georgetown*, 2000 ME 106, 752 A.2d 183 for the proposition that regulations that do not provide adequate notice to those subject to them result in denial of equal protection and arbitrary and discriminatory enforcement. Petitioner further cites to *Kosalka*, 752 A.2d 183 and *Stuki v. Plavin*, 291 A.2d 508 as examples of language so devoid of objective standards as to provide criteria with which persons may be held to comply. *Kosalka* involved a zoning ordinance provision requiring that certain developments "conserved natural beauty," a three word term. The court found that the phrase was an immeasurably quality, totally lacking in cognizable, quantitative standard and therefore an unconstitutional delegation of legislative authority and violative of the Due Process Clause. *Kosalka*, 752 A.2d at 187.

Similarly, the Court in *Widewaters Stillwater Co. LLC v. Bangor Area Citizens Organized for Responsible Development*, 2002 ME 27, 790 A.2d 597 found that a provision in a Bangor ordinance requiring the planning board, when reviewing an application for a land development project, to consider the "effect on the scenic or natural beauty of the

area or on historic sites or rare and irreplaceable natural areas" to embody an unconstitutional delegation of legislative power and therefore suffered the same constitutional defect as the ordinance in *Kosalka*, 752 A.2d 183.

Finally, petitioner argues that *Kosalka* sets the clear standard of law for an ordinance to be valid, it must provide answers to two questions in order to avoid being declared void on its face: "Under what set of facts do we [the planning board] grant or withhold approval?" and, "What must I [the applicant] present to gain the board's approval?"

As noted in 16 MAINE BAR JOURNAL 12, January, 2001, in an article entitled "Securing Local Land Use Permits: An Ounce of Prevention Is Worth a Pound of Cure," the author follows a discussion of *Kosalka* with the comment that our Law Court has also held that seemingly similar zoning ordinance provisions are not unconstitutionally vague noting that the court may look to the entire statutory scheme rather than focusing on the general language of the individual provision and commenting that the court had upheld language that a project have "no adverse effect on the natural environment." Citing *Northeast Occupational Exchange, Inc. v. State*, 540 A.2d 1115; *In re Spring Valley Development*, 300 A.2d 736. The Law Review article cautions the reader to examine prior decisions in the subject area upholding such provisions that the court finds an ordinance through which the statutory scheme provides a developer with some guidance in meeting the standard and it cautions the reader to make a comparison between a particular municipality's ordinance and the language reviewed in the case law and determining whether a constitutional challenge to planning board discretion is worth pursuing.

Our law requires the court to presume the constitutional validity of a zoning ordinance and places the burden of demonstrating its unconstitutionality on the party

Upon further complaint by a party that the board's findings were insufficient to support its decision that it would not "have an undue adverse effect upon the scenic or natural beauty of the area," the court goes on to say, "Due to the subjective nature of the section 1H requirement, it is difficult to envision more adequate findings. The board members were familiar with the site and the minutes from the board meetings reflects much discussion concerning proposed subdivision."

In the comprehensive plan of the Town of Newcastle, preserving scenic resources is a specific goal. One purpose of the Land Use Ordinance is to conserve "the traditional character of the Town." A "view" has been defined as, "What can be seen from a specified point, fine natural scenery; range of vision; visual inspection of something." OXFORD AMERICAN DICTIONARY, 1980. In its Land Use Ordinance, the Town has specified designated areas as "special views requiring preservation and enhancement to the greatest extent possible." This includes the view from U.S. Route 1, the main exit ramp and River Road across the Damariscotta River to the Town of Damariscotta. Rather than a simple phrase as "conserve natural beauty," the ordinance prescribes a specific view from specific location and the description is inclusive rather than alternative. Notwithstanding a lack of a point on the ground, the standard of a location to the extent there exists a view across the Damariscotta River to the Town of Damariscotta provides sufficient standard as to the location. The petitioner has provided no evidence to suggest that the paved parking area for which they seek approval does not come within that description. Indeed, there appears to be no question, once the Lincoln Home decided to convert a temporary construction parking area into a parking lot, site approval was required from either the CEO or the Planning Board. There is no evidence Lincoln Home has ever suggested the area in question did

not come within the jurisdiction of the ordinance requiring a preservation of the scenic view.

The petitioner has presented no evidence to suggest that the decision by the Newcastle Planning Board was arbitrary, capricious, an abuse of discretion or that it contained any errors of law. "Arbitrary:" based on random choice or impulse. "Capricious:" guided by caprice, impulsive. "Caprice:" a whim. OXFORD AMERICAN DICTIONARY, 1980. "Abuse of discretion:" an adjudicator's failure to exercise sound, reasonable and legal decision-making. BLACK'S LAW DICTIONARY, 7th ed.

While the decision appears to be a very fine line, this court interprets the circumstances of the instant matter to be more closely akin to *Wright v. Michaud,* 2000 A.2d 543, *Finks v. Maine State Highway Commission,* 328 A.2d 791, and *Conservation Law Foundation v. Lincolnville,* 786 A.2d 616 rather than *Konsaldo v. Town of Georgetown,* 752 A.2d and *Wide Waters v. Bangor Area Citizens,* 790 A.2d 597.

The Town of Newcastle has approved the comprehensive plan in which it seeks to preserve its beauty as a matter of public welfare. It has decided that the restoration, preservation and enhancement of scenic beauty adjacent to its public ways is within the public welfare and fills the social need with the concept of natural scenic beauty and is a sufficiently definite concrete image when tested objectively so as to provide an adequate standard. The members of the Newcastle Planning Board were familiar with the ordinance and the area in question. They visited the site on more than one occasion. They reviewed all materials submitted to them including photographs. They had a full discussion with intercourse with a professional architect representing the Lincoln Home. It is clear that the Board fully and conscientiously considered the issue before it made its final decision. The decision was unanimous.

attacking the ordnance. "An ordinance is unconstitutionally vague only when it sets guidelines which would force persons of general intelligence to guess at its meaning, leaving them without assurances that their behavior complies with legal requirements and forcing courts to be uncertain in their interpretation of the law." *Britton v. Town of York*, 673 A.2d 1322, citing *Bushey v. Town of China*, 645 A.2d 615. Failure to define a term in a zoning ordinance does not render an ordinance unconstitutionally vague. *Britton*, 673 A.2d at 1324. The court's inquiry "turns not on whether the ordinance could have provided more specific guidance to applicants by defining every term in the ordinance but on whether the ordinance contains sufficient qualitative standards to guide the applicant and limit the board's discretion." *Britton*, 673 A.2d at 1324.

*Wright v. Michaud*, 160 Me. 164, 200 A.2d 543 is a mobile home case. It examines the statute providing the powers to municipalities to adopt zoning ordinances "as an integral part of a comprehensive plan for municipal development and promotion of the health, safety, and general welfare of its inhabitants. *Wright*, 200 A.2d at 545. It quotes *Bremen v. Parker*, 348 U.S. 26, 75 S.Ct. 98 (1954). "The concept of the public welfare is broad and inclusive . . . The values it represents are spiritual as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well clean, well balanced as well as carefully patrolled." In 1974, our Court decided *Finks v. Maine State Highway Commission*, 328 A.2d 791. While this is a highway taking case, it describes the taking in conjunction with a comprehensive plan to preserve and develop the natural scenic beauty along and adjacent to a state highway. It found that the "restoration, preservation and enhancement of scenic beauty adjacent to public highways is a public use for the public welfare, filling a social need of our times." *Finks*, 328 A.2d at 794, quoting *Wes Outdoor Advertising Co. v. Goldberg*, 262 A.2d 199. The Court quotes *Kamrowsky v. State*, 142

N.W.2d 793 wherein the Wisconsin court said, "More importantly, however, we consider that the concept of preserving a scenic corridor along a parkway, with its emphasis upon maintaining a rural scene and preventing unsightly uses is sufficiently definite so that the legislature may be said to have made a meaningful decision in terms of public purpose, and to have fixed the standard which sufficiently guides the commission in performing its task." It goes on to further quote from *Wes Outdoor Advertising Co.* that "'scenic beauty' is concerned with such manifold possible situations that it does not lend itself to a more specifically detailed descriptive statement. The tabulation of the various possible elements constituting scenic beauty is well-nigh impossible." *Finks,* 328 A.2d at 796.

In *Conservation Law Foundation, Inc. v. Town of Lincolnville,* 2001 ME 175, 786 A.2d 616, the Court was called upon to determine whether a subdivision ordinance requiring the planning board to ensure that an approved subdivision "will not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplacement natural areas of any public rights for physical or visual access to the shoreline" is unduly vague and therefore unconstitutional. Among other arguments espoused by the appealing party was the argument that the ordinance required a subjective analysis and could only depend upon the perspective of the individual making the determination. In approving the language, the Court says the following:

> The members of the Lincolnville Planning Board were familiar with the Munroe field area and visited the site before making their determination. They also reviewed other materials submitted by the Developers such as an artist's renderings of the proposed development, a profile of the project which portrayed the heights the residents in relation to a tree line, and · engineering data containing contour lines of the slope of the hill . . . Perhaps a board made up of different individuals would have voted differently. Nonetheless, we are satisfied that there was sufficient evidence in the record to support the board's decision.

The petitioner has not met its burden of showing that the evidence compels a contrary conclusion or that a decision of the Planning Board was founded upon errors of law.[2]

For the reasons herein expressed, the entry will be:

> The Decision of the Town of Newcastle Planning Board represented by its letter of April 16, 2002, to the Lincoln Home denying the amendment of the site plan for expansion of parking into the public scenic view is AFFIRMED.

Dated: February 25, 2004

Donald H. Marden
Justice, Superior Court

For Plaintiff:
Richard L. Hornbeck, Esquire

For Defendants:
Mark V. Franco, Esquire
        and
Franklin M. Walker, Jr., Esquire

---

[2] While it is not the role of this court to make findings of fact except as to review the record for sufficient evidence to support the Planning Board's conclusion, no reasonable person can observe the view as represented by plaintiff's photographs 3 and 6 and defendants' exhibits 1 and 2, without being satisfied that the parking lot represents an adverse effect on the public's scenic views.