STATE OF MAINE
CUMBERLAND, ss.

ANDREW BEAHM, DEBORAH )
MEGNA, PATRICE WALSH and )
DONALD WALSH, )
                                        )
            Petitioners                 )
                                        )
    v.                                  )
                                        )
TOWN OF FALMOUTH,                       )
                                        )
            Respondent                  )
                                        )
    and                                 )
                                        )
DUNCAN MACDOUGAL,                       )
CORNFIELD, LLC, JENNIFER J.             )
ANDREWS and MARK E. BATISTA,            )
                                        )
            Parties-In-Interest.        )

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-17-28

ORDER ON PETITIONERS' RULE
80B APPEAL

STATE OF MAINE
Cumberland ss Clerk's Office

APR 23 2018  2:16PM
RECEIVED

Before the Court is Petitioners' Rule 80B appeal of the May 25, 2017 decision of the Town of Falmouth Board of Zoning Appeals ("BZA" or "Board") approving a conditional use application for the construction of a residence on a nonconforming lot. Following the submission of the record and briefs in accordance with M.R. Civ. P. 80B(f) and (g), this matter is in order for this Court's decision.

I. Background

On February 28, 2017, Applicant Duncan McDougall ("Applicant") submitted to the BZA an application seeking to construct a single-family residence and garage on a lot under 10,000 square feet located at 32 Andrews Avenue, Falmouth, Maine. The Application for a Conditional Use requires the applicant to meet each of the criteria set forth in the Town of Falmouth Code of Ordinances ("Code"), §§ 19-119 and 19-123. Section 19-119 requires, *inter alia*, the proposed use

**Petitioners–Gerald Schofield, Esq.**
**Respondent Town–Amy Tchao, Esq.**
**Respondent MacDougal/Cornfield LLC–**
**Thomas E Schoening III, Esq.**

1 of 9

"will not have a significant adverse effect on adjacent or nearby property values" and "will not have a significant adverse impact on water views from adjacent and nearby properties and public right of ways." Code § 19-119(d), (e). Section 19-123 likewise states: "The proposal should not have a significantly adverse effect on adjacent or nearby property values." Code § 19-123(f).

Petitioners Andrew Beahm and Deborah Megna reside at 24 Andrews Avenue, Falmouth, Maine. Petitioners Donald and Patrice Walsh reside at 17 Whitney Road, Falmouth, Maine. Defendant does not deny that Beahm, Megna and the Walshes own "adjacent or nearby properties" to 32 Andrews Avenue as referenced in the Code.

The BZA held a hearing on the application on March 28, 2017. Prior to the hearing, Petitioner Beahm submitted to the Code Enforcement Officer photographs that Beahm contends depict water views from his home which will be lost if the proposed structure is constructed. Several residents of Andrews Avenue and Whitney Road, including Petitioners Beahm, Megna, and Patrice Walsh, attended the hearing and made public comments expressing concerns regarding the height of the proposed structure and the possible obstruction of water views. After discussion about water views and heights of surrounding homes, the BZA determined a site visit was necessary to evaluate the potential loss of water views. The 32 Andrews Avenue project was the only item of discussion during the nearly two-hour hearing. Applicant tabled his application.

Three members of the BZA conducted the site visit on April 25, 2017, and a second hearing was held later that day. Applicant had revised his proposal to lower the roof line by one foot. Several abutters, including Petitioners, again attended to express concerns about the height of the home, loss of water views, and effects on character of the neighborhood. Concerns were also raised about decreased property values and setting a precedent for teardowns. Board members who were present for the site visit acknowledged that any structure built on the subject property would

completely obstruct some water views. One Board member stated he was "leaning towards not being able to support the project," and the Board Chair agreed that he was leaning towards finding the home was of incompatible size and would significantly obstruct water views. (R. 75.) After being advised by the Board that "people expect a home will be built there, but the scale and bulk needs to be revisited," Applicant again chose to table the application. (*Id.*)

A third hearing was held on May 23, 2017. Applicant had again revised his plans to lower the roof height another five feet and eliminate a second floor living space that would have connected the main upstairs living space with a room over the garage. At least one abutter contacted Applicant to thank him for listening to the abutters' input and scaling back his proposal. Only Petitioners Beahm, Megna, and Patrice Walsh made public comments, again expressing concerns over lost water views and the size of the proposed structure. The BZA acknowledged that any structure would block some water views, but "the intent of the code is not to make anything unbuildable." (R. 95.) The BZA approved the application by a two-to-one vote and formally issued its "approved" decision on May 25, 2017.

Petitioners requested reconsideration from the BZA on June 1, 2017 and submitted letters expressing the basis of the request. The letter from Beahm and Megna requested the BZA view photographs they had previously submitted but believed had not been viewed or discussed, reiterated they would lose their view of Portland Headlight and Spring Point Light, and noted that they had constructed their house to gain water views, in reliance on the Code's protection of those views. The letter from the Walshes argued their view was "unseeable" on the day of the site visit due to fog, complained that 100% of their water view would be obstructed by the approved structure, and stated their realtor had indicated their water view increased their home value by 20-

to-25%, or around $100,000. The BZA determined Petitioners had presented no new information warranting a reconsideration and denied the request at a June 27, 2017 hearing.

The BZA issued formal Findings and Conclusions on June 27, 2017. (R. 114-117.) The findings list each subsection of the relevant sections of the Code and state the Board's findings pertaining to each subsection. Regarding subsections 19-119(d) and 19-123(f), which relate to property values, the BZA found: "Various abutting property owners expressed concern that the proposed structure would affect their water views and could therefore negatively impact property values." (R. 115, 117.) Regarding subsection 19-119(e), which relates to water views, the BZA found:

    i.    The property at 17 Whitney Road has a very small water view from the rear, southern facing living room window. From there the resident can look through the open lot and across Andrews Avenue to see water. The aforementioned view would likely be obstructed.
    ii.   The property at 17 Whitney Road has a very small water view from the rear, western facing master bedroom window. From there the resident can look through the open lot and across Andrews Avenue to see water. The aforementioned view would likely be mostly obstructed.
    iii.  The property at 24 Andrews Avenue has a small water view from the side, southern facing attic window. From there the resident can look over the adjacent property to see water. The aforementioned view would likely be partially obstructed.
    iv.   The property at 24 Andrews Avenue has a medium water view from the side southern facing guest bedroom window. From there the resident can look over the adjacent property to see water. The aforementioned view would likely be partially obstructed.

(R. 115-116.) Despite noting these concerns, the BZA ultimately concluded "the proposal preserved the character of the surrounding neighborhood and did not represent a significant adverse impact on water views from adjacent and nearby properties." (R. 117.)

Petitioners filed their Rule 80B complaint on July 7, 2017.

II. Standard of Review

The decision of a fact-finding body in an 80B appeal is reviewed for errors of law, abuse of discretion, or findings not supported by substantial evidence. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The burden of persuasion is born by the party seeking to overturn the decision. *Id.* The Board's conclusion as to what facts meet the requirements of a zoning ordinance are afforded deference and "will only be overturned if it is not adequately supported by evidence in the record." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768.

A court will review local interpretations of local ordinances *de novo* as a question of law. *Aydelott*, 2010 ME 25, ¶ 10, 990 A.2d 1024; *Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 10, 856 A.2d 1183. The court examines the ordinance for its plain meaning and construes its terms reasonably in light of the purposes and objectives of the ordinance and its general structure. *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27.

III. Discussion

The parties' briefs focus most heavily on Petitioners' anticipated lost water views. Particularly given the BZA's acknowledgment that the Walshes will lose 100% of their water views if the proposed structure is constructed, Petitioners ask, "if a complete loss of multiple … homeowners' adjacent or neighboring properties' water views is not 'significant,' what possibly could be under the Code?" (Pet.'s Br. 16.) Although this argument seems persuasive at first blush, the Court concludes that, in the context the of the BZA's entire decision-making process with regard to this application, the BZA did not make an error of law or abuse its discretion, and the BZA's conclusion is supported by substantial evidence in the record.

This case is analogous to *Conservation Law Found., Inc. v. Town of Lincolnville*, in which the Law Court upheld a municipal planning board's approval of a subdivision plan notwithstanding a municipal ordinance requiring the proposal "'will not have an undue adverse affect [*sic*] on the

scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas or any public rights for physical or visual access to the shoreline.'" 2001 ME 175, ¶¶ 3, 10, 786 A.2d 616. The Court grounded its decision in the facts that the Board was familiar with the area and visited the site, reviewed an artist's renderings of the proposal, and engaged in much discussion before reaching its decision. *Id.* ¶ 8. The Court found "the Board fully and conscientiously considered the proposed easement before it made its final decision[, and] the Board's findings were adequate. *Id.* ¶ 9.

The Board's decision-making process in *Town of Lincolnville* is comparable to the BZA's process in this case. The BZA held three public hearings to discuss this application. After the BZA solicited input from abutters, Applicant revised his proposal multiple times to appease his neighbors. Three Board members conducted a site visit to evaluate the existing water views and the effect the proposed structure would have on them. Although Petitioners attempt to use as a weapon some Board members' hesitance to approve the project over the course of the proceedings, the fact that at least one of these Board members was later persuaded to approve the project is further evidence that the BZA engaged in a thoughtful and dynamic assessment. Indeed, the final proposal represents a collaboration between Applicant, the BZA, and the abutters who voiced their opinions at the public hearings. Following this comprehensive decision-making process, the Board relied on substantial evidence to ultimately decide that the complete loss of "very small" water views from 17 Whitney Road and the partial loss of small and medium water views from 24 Andrews Avenue were not sufficiently significant to deny the application. As discussed by the Court in *Lincolnville*, "[p]erhaps a Board made up of different individuals would have voted differently," but the BZA's decision pertaining to water views was nonetheless supported by substantial evidence. *See id.* ¶ 8.

More troubling to the Court is the failure of the BZA to fully address the potential impact on property values in its findings and conclusions. The findings only indicate that some abutters were concerned about their property values, and no specific conclusion was issued with regard to property values. An administrative board's findings must be "sufficient to show the parties, the public, and an appellate court the basis for its decision." *Bodack v. Town of Ogunquit*, 2006 ME 127, ¶ 16, 909 A.2d 620. However, findings need not always be made explicitly in written form; "[i]n some cases the subsidiary facts may be obvious or easily inferred from the record and the general factual findings, and a remand would be unnecessary." *Christian Fellowship & Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 19, 769 A.2d 834.

In this instance, the Court can infer that the BZA determined property values would not be significantly adversely affected based on the facts supporting the conclusion that water views would not be significantly adversely impacted. It is telling that the Board's findings regarding the property values criteria state: "Various abutting property homeowners expressed concern that the proposed structure would affect their water view *and could therefore negatively impact property values*." (R. 115, 117.) Under the BZA's analysis, the two criteria are intertwined, and the Court can infer that the findings and conclusions on one criterion are informed by the findings and conclusions on the other. Moreover, between the three public hearings and the request for reconsideration, Petitioners had no fewer than four opportunities to challenge the application on this ground, yet they failed to present to the Board any evidence of lost property values. Although Applicant had the burden to prove his proposal met the requirements of the Code, the Court is satisfied that the BZA reasonably concluded after much deliberation that because the proposal would not significantly impair water views, it would also not significantly harm property values.

The Court will not second-guess the decision of the BZA, which was reached after lengthy and thoughtful deliberation.

Further, the BZA's conclusion that "the proposal preserved the character of the surrounding neighborhood" supports an inference that the proposal fits squarely in the escape valve in Code § 19-119(j), which states a conditional use permit shall be granted unless the proposed use fails to meet one of the standards contained in section 19-119 or section 19-123 "due to unique or distinctive characteristics or effects associated with the proposed use or its location which differ substantially from the characteristics or effects which would normally occur from such a use in that district." Because the BZA concluded that the proposal preserves the character of the neighborhood, in accordance with subsection 19-119(j), even a finding of an adverse impact on property values would not have been sufficient in and of itself to defeat the application.

In sum, the BZA's findings and conclusions are adequate and supported by substantial evidence in the record.

Alternatively, Petitioners challenge the validity of the relevant ordinances as overly broad and unconstitutionally vague, arguing that the BZA's power to determine the meaning of "significant" adverse effects on water views and property values grants the BZA "unfettered discretion" to make a decision on the application. (Pet.'s Br. 15-16.) The Court is not persuaded. In *Uliano v. Bd. of Envtl. Prot.*, the Law Court affirmed the constitutionality of a statute that requires the BEP to find a proposed "activity will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." 2009 ME 89, ¶¶ 14, 29-30, 977 A.2d 400, *quoting* 38 M.R.S. § 480-D(1) (2008). The Court in *Uliano* contrasted the statute in question with the unconstitutionally vague municipal ordinance in *Kosalka v. Town of Georgetown*, 2000 ME 106, 752 A.2d 183, which required an applicant to demonstrate that the proposed project would

"conserve natural beauty." *Uliano*, 2009 ME 89, ¶ 24, 977 A.2d 400. The *Uliano* Court determined that "[i]dentifying an existing scenic or aesthetic use … and determining whether a proposed activity will unreasonably interfere with those uses is a far more concrete exercise than the amorphous command we considered in *Kosalka* requiring an applicant to prove that a project will 'conserve natural beauty.'" *Id.* ¶ 25.

Although *Uliano* involved a statute delegated to a state agency rather than an ordinance administered by a municipal board, the Law Court's reasoning is relevant here. Code §§ 19-119 and 19-123 lay out a number of criteria that the BZA must consider in evaluating an application. Some of these criteria are more qualitative than others; however, subjectivity and necessity of qualitative analysis are not sufficient to render an ordinance unconstitutional. *See Uliano*, 2009 ME 89, ¶ 30, 977 A.2d 400 ("Although scenic and aesthetic uses are not readily susceptible to quantitative analysis, the Constitution does not demand such an analysis in order to subject those uses to legal protection."). The standard of "significant" adverse effects as contained in the ordinances is not "so vague that people of common intelligence must guess at its meaning." *Portland v. Jacobsky*, 496 A.2d 646, 649 (Me. 1985). Like the statute in *Uliano*, the ordinances here provide for a far more concrete analysis than the ordinance under review in *Kosalka*, and they are not overbroad or void for vagueness.

IV. Conclusion

For the foregoing reasons, Petitioners' Rule 80B appeal is DENIED. The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____4/23/18_____

_____
Lance E. Walker, Justice
Maine Superior Court