STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTIONS
JLH - HAN - 11/4/2004

Dominick Parisi et al.,
    Plaintiffs


v.

(AP-03-22)


Town of Deer Isle,
    Defendant

and

Robert Colcher et al.,
    Intervenors


************************

Order on Appeal


Robert Colcher et al.,
    Plaintiffs

DONALD L. ___ ___
L___

NOV ___ 2004

v.

(AP-04-3)


Town of Deer Isle,
    Defendant


    Pending before the court are separate appeals from decisions made by the Town of Deer Isle Planning Board and the Town of Deer Isle Board of Appeals, adjudicating aspects of a preliminary plan application filed by Dominick and Joanne Parisi (collectively, "Parisi"). The court has considered the parties' submissions on these

1

appeals.[1] The court addresses the merits of the parties' contentions in this single consolidated order because of the interrelated nature of the two underlying proceedings.

Parisi owns 21.9 acres of improved real estate located in the Town of Deer Isle. In November 2002, Parisi filed with the Town Planning Board a preliminary plan in support of an application for subdivision approval.[2] Under the plan, buildings used as a seasonal rental lodging facility would be replaced with a number of structures that would house 28 condominium units. Although Parisi considered an alternative configuration, he ultimately sought municipal approval of a facility that would consist of twenty-two buildings: sixteen of them would each house a single condominium unit, and the remaining buldings would be duplexes. As part of the application, Parisi sought waivers of muncipal ordinances governing the minimum lot size required for the project and for two particular road standards. After the Planning Board advised Parisi that the application was complete, beginning in January 2003 it embarked on an extended series of public hearings and public deliberations. Robert Colcher and Marion Colcher (collectively, "Colcher"), who own land abutting Parisi's (over which passes the access road to Parisi's property), participated in the Planning Board proceedings.

Ultimately, in September 2003, the Planning Board voted 3-1 to deny approval of Parisi's preliminary plan. In its written decision,[3] the Board expressed its conclusions that the preliminary plan application failed to satisfy several criteria imposed by the

---

[1] As Colcher correctly notes, Parisi's reply brief in AP-03-22 includes extrinsic documents and other materials that were not included in the record on appeal. The court strikes that material. Additionally, Parisi raises several arguments in his reply brief that were not set out in the original brief on appeal. Such new matters have been waived, and the court declines to consider them.

[2] Unfortunately, the extensive record in AP-03-22 has not been organized in a way that includes a centralized reference system. The preliminary plan application is attached to the complaint.

[3] The Planning Board's written decision is found in the first tab of the notebook marked, ""Supplemental Submittal of Testimony and Exhibits."

subdivision regulations included in the Town's land use ordinances.[4] (The Planning Board also concluded that certain other aspects would require modification to meet the requirements of the ordinances but that these modifications could be included in a final plan.) As determined by the Planning Board, Parisi's preliminary plan did not comport with the following legislative requirements:

1) the lot size requirements, which the Planning Board concluded are the ones set out in SUBDIVISION REGULATIONS OF THE TOWN OF DEER ISLE, MAINE ("Ordinance"), § 2.6(A);[5]

2) the easements for storm water and drainage flows under section 2.7, because, the Planning Board concluded, there was insufficient information to conclude that the plan met those standards;

3) access road and turnout requirements imposed by section 3.3(B)(5), because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate to demonstrate compliance;

4) the following road design standards, because the plans affirmatively do not satisfy the quantitative standards created by the ordinance: right of way; width of pavement; maximum grade; maximum grade at intersections; minimum tangent length between reverse curves; and road base;

5) the following additional road design standards, because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate

---

[4] In AP-03-22, the municipal ordinances governing subdivisions are attached to the plaintiffs' brief and appear as a stand-alone pamphlet as part of the record. In AP-04-3, they appear at R. 328-359.

[5] This conclusion also constituted a finding that the preliminary plan did not comply with section 2.6(D), which reiterates the lot size requirement in conjunction with other features of the proposed lots.

It bears note that the decision of whether to characterize Parisi's proposed development under section 2.6(A) or 2.6(B), taken by itself, would have particular significance, because the lot size requirements differ between the two. If the development falls under the former provision (as Colcher contends and the Planning Board concluded), then the site is not large enough to accommodate the number of buildings that Parisi has proposed. On the other hand, if the project is controlled by the latter section (as Parisi contends and the Board of Appeals later concluded), then the amount of existing land may be sufficient.

to demonstrate compliance: minimum angle of intersections; minimum width of shoulders; minimum centerline radii on curves; minimum road crown; minimum width of cul-de-sac at Lady Fern Drive; radii at turn-around; property line radii at intersection; and curb radii at intersections;

6) the requirement under section 3.3(B)(7) that road intersections and curves must be designed to permit safe passage by pedestrian and vehicular traffic, because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate to demonstrate compliance;

7) the requirements of vehicular turn out under section 3.3.(B)(8) , because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate to demonstrate compliance;

8) the requirement under section 3.3(B)(9) that dead-end streets must provide a cul-de-sac turn-around, because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate to demonstrate compliance;

9) the requirement under section 3.5(B) controlling the capacity of the storm water management system to accommodate unplanned increased water runoff, because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate to demonstrate compliance; and

10) the requirement under section 3.5(D) that the design to manage surface water runoff is based on a 50 years storm, because the Planning Board concluded the information supporting this aspect of the preliminary plan was inadequate to demonstrate compliance.

In the preliminary plan application, Parisi sought waivers of three requirements set out in the subdivision ordinance. These included waiver of the criteria in section 2.6 (lot size), and the portions of section 3.3(B)(6) governing minimum width for rights of way and the minimum width of pavement. A Planning Board member moved to grant the first of these requested waivers. However, the motion was not seconded, and so the Board did not act on it formally. The Board affirmatively denied the waiver that Parisi sought for the required minimum width for rights of way, and it granted the waiver for pavement width, thereby allowing the proposed 18 feet width for the pavement (instead of 20 feet) and the proposed shoulder width of 2 feet (instead of 3 feet).

4

From the Planning Board's denial of the preliminary plan application, Parisi filed two appeals. The first, embodied in AP-03-22, was to this court pursuant to section 10 of the subdivision ordinance and M.R.Civ.P. 80B.[6] The second appeal was directed to the Town's Board of Appeals under section 10 of the subdivision ordinance, which vests the Board of Appeals with appellate jurisdiction over decisions made by the Planning Board "regarding interpretations of the Ordinance. . . ." During the initial stages of the appeal to the Board of Appeals, that entity, after hearing from the parties, concluded that the only issue raised by Parisi falling within the parameters of its jurisdiction was Parisi's contention that the proposed development was not subject to section 2.6(A) of the ordinance, which governs "[s]ingle family residential lots," but rather that it fell within the ambit of section 2.6(B), which applies to developments consisting of "[m]ulti-family, lodging units, and motels/hotels." None of the parties has challenged this ruling. After a public hearing (in which Colcher again participated), the Board of Appeals concluded that the Planning Board committed error by not treating Parisi's proposed plan as one that is governed by section 2.6(B). On this basis, the Board of Appeals remanded the matter to the Planning Board for further action predicated on section 2.6(B). From this decision, pursuant to 30-A M.R.S.A. § 2691(3)(G) and M.R.Civ.P. 80B, Colcher appealed to this court.[7]

The parties raise a number of issues on this appeal. In the direct appeal from the Planning Board, Parisi appears to make the following central arguments: a) that some of the members of the Planning Board were biased in opposition to the application (count 7 of the complaint); b) that the Planning Board failed to apply the correct standard of review in its assessment of the preliminary plan and instead used a more exacting standard that should be associated only with consideration of the final plan and that it erred in its conclusion that the preliminary plan did not satisfy the requirements of the ordinance (count 1); c) that the Planning Board's written findings of fact and conclusions of law are inadequate (counts 2 and 6); d) that because the Planning Board accepted the

_____

[6] Colcher was granted intervenor status in Parisi's Superior Court appeal of the Planning Board's decision.

[7] Parisi has not entered an appearance or otherwise participated in Colcher's Superior Court appeal of the Board of Appeals' decision.

5

preliminary plan as complete, it was barred from finding that it failed to include sufficient information on several aspects of the proposed development (count 3); e) that the Planning Board did not adequately consider the waiver requests (count 4); and f) that the Planning Board erred in applying the requirements of section 2.6(A) to the preliminary plan, rather than those of section 2.6(B). Then, in the appeal from the decision of the Board of Appeals, Colcher contends that the Board of Appeals erred in concluding that the proposed development is in the nature of a section 2.6(B) set of "[m]ulti-family, lodging units" rather than a series of "[s]ingle family residential lots" governed by section 2.6(A).

## A. Bias and conflict of interest

Parties to an administrative or governmental proceeding are entitled "to a fair and unbiased hearing." *Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 902 (Me. 1993). Here, Parisi makes two distinct arguments that the Planning Board proceeding was affected by bias. First, Parisi contends that two Board members (Maberry and Stewart) harbored a bias against the project. Second, Parisi argues that Stewart and another Board member, Jones (the Board's chair), are occasional co-employees and that their relationship affected the decision.

As part of an appeal from governmental action, allegations that a decisionmaker was biased can be pursued by means of a trial of the facts pursuant to M.R.Civ.P. 80B(d). *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240-41. Despite the availability of that procedural alternative, Parisi has elected not to seek a trial of the facts. Consequently, an analysis of Parisi's bias claim is limited to the record on appeal. Thus, the resulting question is whether, as a matter of law, the record compels the conclusion that Board's proceeding was affected by biased. The relevant portions of the record include a letter dated June 30, 2003, in which Parisi's counsel raised the issues of bias that Parisi now pursues on this appeal. It also includes the transcript of the Planning Board's meeting of July 10, 2003, which was largely dedicated to the Board's response to and consideration of the bias allegations expressed in the June 30 letter.

## 1. Bias of Mayberry and Stewart

Parisi accused Stewart and Maberry of conduct that, in Parisi's view, manifested personal hostility against them. At the July 10 hearing, Stewart denied that he felt

antagonistic toward the applicants, *see* July 10, 2003, transcript at p. 44, and Maberry also indicated that she harbored no prejudice toward Parisi, *see id.* at p. 58-59.[8] Indeed, both Stewart and Maberry stated that they did not have a relationship with Parisi and that had had no contact with Parisi outside of the setting of Parisi' permit application. The remaining two participating members of the Board found as factual matters that the allegations of bias by Stewart and Maberry were unfounded. On this record, the evidence does not establish as a matter of law that these two Board members were biased against Parisi.

Parisi also charged that one or more Board members had had ex parte communications regarding the proposed development and permit application and that these contacts were with project opponents. Both in the June 30 letter and at the July 10 Board meeting, Parisi chose not to reveal the name of the opponents. (Further, despite pressing this claim on the appeal at bar, Parisi declines again to identify the person who is the source of this allegation. *See* Plaintiff's Brief at p. 19.) In response to this charge, all of the Board members stated publicly that they had not participated in any such ex parte communications. *See* July 10, 2003, transcript at p. 36.[9] Particularly in light of the sketchy nature of Parisi's allegations, the record does not demonstrate that any of the Board members engaged in ex parte communications, much less that any such communications rendered the Board biased against Parisi.

## 2. Employment relationship between Board members

The June 30 letter from Parisi's counsel also expressed concern that Board members Stewart and Jones had an employment relationship that had not been disclosed at any prior meetings. This connection, in Parisi's view, raised the specter of a "potential

---

[8] Maberry's denial of prejudice was less direct than Stewart's. The clear import of her statements at the July 10 meeting, however, reveals her view that she felt no bias against Parisi.

[9] Maberry stated that she "talk[ed] to her husband a little bit, but he keeps his mouth shut. I've got to have a sounding board of some sort." Parisi does not argue here that this is the basis for his contention of bias, and the record would not support such an argument because the evidence demonstrates that Maberry's husband did not talk to her about the project. Rather, "he keeps his mouth shut."

7

for undue and improper influence. . . ."[10] At the July 10 meeting, Jones stated that he worked part-time for Stewart when he (Jones) was not engaged in his regular fishing job. *See* July 10, 2003, transcript at p. 41. Jones also stated that he did not "need the job [with Stewart]. I like working." *Id.* Jones concluded by saying that "if he [Stewart] tried to influence me in any way on any decision that I wanted, didn't feel it was right, I'd tell him to take his job and shove it. So I'm just saying this as to say that there's no worry about him trying to influence me." *Id.* Stewart then addressed the issue, pointing out that Jones is occasionally employed by his company, that this relationship is a matter of public knowledge, and that "[n]either one us had had, could have had, or would have had any influence over the other's opinions or decisions in this case. I – and I'm sure Mr. Jones – will make our decisions based on the evidence at these hearings in our individual administration of the Town of Deer Isle subdivision ordinance." *Id.* at pp. 43. The two remaining Board members found that the Jones-Stewart employment relationship did not constitute a conflict of interest or that there was evidence of improper influence. *Id.* at p. 48. Contrary to Parisi's apparent argument here, the record did not compel a different outcome.

Although Parisi does not make this argument, Colcher responds to this issue in part with reference to 30-A M.R.S.A. § 2605, which defines conflicts of interest that render some governmental decisions voidable. The employment relationship between Jones and Stewart does not create a "direct or indirect pecuniary interest" within the scope of section 2605(4), because there is no meaningful evidence in the record on appeal that either had some stake in the proposed development itself. Further, particularly in light of the record developed at the July 10 hearing, that relationship cannot be said to compel the conclusion that either of the two Board members created an appearance of a conflict of interest tainting the Board's ultimate decision.

### B. Scope of preliminary plan review

---

[10] In the letter, Parisi's counsel does not allege an actual conflict of interest. Rather, he contends that the employment relationship creates that potential, which he expected the members would deny. The letter goes on to argue that the employment relationship should have been disclosed at the outset of the municipal proceeding so that Parisi could have elected whether to proceed with the application. Parisi makes the similarly limited point in the complaint, and in the brief on appeal, Parisi only points to the fact of the employment relationship, without explicitly arguing that it has any significance.

8

The applicable municipal ordinances establish a three-step process for the Town's consideration of a subdivision application: a preapplication review, an assessment of a preliminary subdivision plan, and an assessment of the final subdivision plan. *See* Ordinance at §§ 5-7. The Planning Board denied approval of Parisi's preliminary plan. Parisi urges here that the denial was grounded on factors that the Board should not have considered as part of the preliminary plan review but rather should have been limited to the assessment of the final plan. As Parisi has framed the issue, when it commenced the public hearings in May 2003, "[t]he Planning Board then began a line by line review of the Subdivision Regulations to determine compliance of the Preliminary Plan [with the requirements of the ordinance]. This process should have been reserved for a Final Plan." Plaintiffs' brief at p. 1. Parisi then argues that the preliminary plan review should be limited to the "general design" and that consideration of the "regulatory requirements" must be deferred to the time when the Board acts on the final plan. *Id.* at p. 2.

The oversight and approval framework created by the ordinance demonstrates that the Planning Board's evaluation of an applicant's preliminary subdivision plan is not as general and non-specific as Parisi urges. By the time the Planning Board reaches the preliminary plan, its evaluation of the proposal has been quite limited: the preapplication review requires the applicant to file only a proposed layout of development "in simple sketch form." Ordinance at § 5.2. Then, the Board members conduct an on-site inspection of locus. *Id.* at § 5.3. This completes the initial process and triggers the preliminary plan proceeding, which is at issue here.

The preliminary plan that Parisi filed with the Planning Board goes well beyond a "general design" for the proposed subdivision. Parisi's preliminary plan application is included in the record on appeal and fills a 3 inch notebook and a second, smaller notebook that Parisi filed later in the process. The application includes, among other things, engineering reports on wetlands, a specific fire protection plan, an engineer's soil analysis, detailed architectural plans for the condominium buildings, and a detailed storm management plan.

The ordinance's requirements for a preliminary plan review justified a submission with the extensive amount of information that Parisi chose to file with the Planning Board. The elements of a preliminary plan are enumerated in section 6.2 of the

9

ordinance. The categories of information include a detailed depiction of the physical features of the land at issue (including location of existing buildings, watercourses, and vegetation); the location and size of the existing and proposed sewer system, including culverts and drainage areas; detailed information about existing and proposed streets, easements and building lines; and, if required by the Planning Board, a soil erosion and sedimentation control plan that has the endorsement of the County Soil and Water Conservation District.

Once the Planning Board finds that the preliminary plan application is complete, it may hold a public hearing. *See* Ordinance at § 6.1((G). Whether or not such a hearing is held, the Planning Board ultimately is required to issue "findings of fact on the application, and approve, approve with conditions, or deny Preliminary Plan. The Board shall specify in writing its findings of facts and reasons for any conditions or denial." *Id.* If approval is granted, the Board must also set out any "specific changes which it will require in the Final Plan. . . ." *Id.* at § 6.1(H)(1). Any approval of the preliminary plan is not equivalent to approval of the final plan, "but rather it shall be deemed an expression of approval of the design of the Preliminary Plan as a guide to the preparation of the Final Plan. The Final Plan shall be submitted for approval of the Board upon fulfillment of the requirements of the regulations and conditions of the preliminary approval, if any." *Id.* at § 6.1(I).

Although this latter provision characterizes an approved preliminary plan as a "guide" to the contents of the final plan, it is clear that the preliminary plan process goes well beyond generalities, both in the contents of the applicant's submission and the nature of the Planning Board's review of it. After the applicant has marshaled and filed the considerable amount of information required in a preliminary plan, the ordinance requires the Planning Board to conduct a careful examination of it. Several aspects of the Board's required responses demonstrates that its review must be more than general and go beyond the concept for the development. For example, the Board is required to issue factual findings. This suggests a level of detail that exceeds Parisi's limited construction of the preliminary plan review process. The Board is also authorized to impose conditions on any elements of the preliminary plan that it had approved. These conditions include changes that the Board will require in the final plan. Parisi views the final plan as the

10

platform where the Board should determine whether the proposed development satisfies the specific requirements of the ordinance. However, because section 6.1(H)(1) authorizes the Board to articulate changes that it requires for the final plan, the Board's analysis of the preliminary plan can only trigger a level of scrutiny that takes into account the specific requirements imposed by municipal law.

This process does not render the final plan review superfluous. The Board then has the opportunity to pass judgment on the plan that incorporates the conditions imposed by the Board at the prior level. Further, the Board may require changes beyond any that are embodied in the conditions imposed on the preliminary plan. *See* Ordinance at § 6.1(I). In addressing the conditions that result from the Board's review of the preliminary plan and those that arise in the first instance when the Board reviews the final plan, the ordinance does not draw any qualitative distinction between the two. Also, when it reviews the preliminary plan, the Board is required to consider any waivers sought by the applicant. *Id.* at § 6.1(H)(2). The Board could not examine the waiver requests without a full consideration of the specific regulatory requirements that the applicant wishes to forego. All of this indicates that when the Board reviews an applicant's preliminary plan, it is entitled to measure the submission against the specific requirements of the ordinance. At least in some respects,[11] the Board engaged in that level of analysis here, and it did not err in doing so.

**C. Sufficiency of Planning Board's written findings of fact and conclusions of law**

As is noted above, the Planning Board denied approval of Parisi's preliminary plan because it concluded that the plan failed to satisfy a number of separate requirements set out in the Town's subdivision ordinance. Ultimately, Parisi –as the party with the burden of establishing compliance with the ordinance, *see* Ordinance at § 2 -- must show that the Planning Board was compelled to approve the plan. *Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me. 1996). Because there were the multiple grounds on which the Planning Board rejected the plan, Parisi must show that error materially affected each of

---

[11] In other respects, the Board noted that the preliminary plan satisfied the ordinance's regulations "in principle" or that it is in "substantial compliance" with particular requirements, subject to clarification in the final plan. *See, e.g.*, Planning Board's Findings of Fact and Conclusions of Law at p. 5 (addressing sections 3.5(A) and 3.5(C)).

11

those reasons. *Tompkins v. City of Presque Isle*, 571 A.2d 235, 236-37 (Me. 1990). Parisi ascribes several errors to the bases for the Planning Board's denial of the preliminary plan application: Parisi argues that the written findings were insufficient and that the record developed before the Board did not support the findings. Under the corollary of *Tompkins,* if, as to any determinative finding, the Board's written findings were both sufficient and supported by the record, then Parisi's argument fails. Here, the court examines Parisi's challenges as they apply to the Planning Board's conclusion that the preliminary plan failed to satisfy the requirements governing the design and construction of roads within the subdivision.

The parties do not dispute a municipality's general responsibility to issue findings in support of its decision. That obligation is based on statute, *see, e.g.,* 30-A M.R.S.A. § 4403(6) (municipal reviewing authority's decisions on subdivision applications); 1 M.R.S.A. § 407, and on caselaw, *see, e.g., Widewaters Stillwater Co., LLC v. Bangor Area Citizens Organized for Responsible Development,* 2002 ME 27, 790 A.2d 597; *Christian Fellowship and Renewal Center v. Town of Limington,* 2001 ME 16, 769 A.2d 834. In addition to the fact that the statutes noted above require the issuance of such findings, such findings are essential to meaningful appellate review because, in the absence of such findings, the parties and the court on appeal will have difficulty identifying the basis for the decision and the subject of that appellate analysis. *Christian Fellowship,* 2001 ME 16, ¶ 15, 769 A.2d at 839.

Here, the written findings issued by the Planning Board are adequate to reveal the reasons why it concluded that Parisi's preliminary plan failed to satisfy the design standards for roads. The written decision identified each of the specific requirements that subdivision road must meet. For each of those standards, the Planning Board expressed its conclusion whether, in its view, the plan satisfied the criterion and, if not, whether the shortcoming was based on insufficient information or affirmative information showing non-compliance. Regarding those flaws, the Planning Board did not specifically articulate the empirical problem affecting the plan (for example, the proposed width of the pavement as proposed in Parisi's plan, its maximum grade, its maximum grade at intersections, etc.). However, meaningful appellate review does not require such

12

additional information, because the explanation provided by the Planning Board adequately discloses the particular basis for its denial of the application.[12]

## D. Sufficiency of the evidence to support the Planning Board's decision

Parisi next argues that the record does not support the Planning Board's conclusion that the preliminary plan did not satisfy the requirements set out in the subdivision ordinance. Such factual findings are reviewed to determine if they are supported by substantial evidence in the record. *Kurlanski v. Portland Yacht Club*, 2001 ME 147, ¶ 7, 782 A.2d 783, 784. Parisi must demonstrate that on the hearing record, the Planning Board was compelled to reach a contrary conclusion. *Veilleux*, 684 A.2d at 415. Even if other reasonable conclusions were available to the Planning Board, the existence of those decisional alternatives does not mean by itself that the decision reached here is unsupported by the record. *Id.*

For the reasons discussed above, the court examines the Planning Board's conclusion that the design of the proposed subdivision roads does not conform to the requirements of the ordinance. The Board was presented with conflicting evidence on that point. Suffice it to say that, particularly in the face of affirmative evidence that the preliminary plan did not meet a number of the relevant roadway criteria, the record developed before the Planning Board did not compel it to accept Parisi's evidence and reject the opponents' evidence. Rather, the latter evidence was sufficient to allow the Planning Board to conclude that the preliminary plan did not fully comport with the Town's legislative requirements.

Parisi questions, without reference to any legal authority, whether the Town "need[s]" to control the width of a private right of way. The ordinance defines a "road," to which that and other design standards apply, without distinguishing between private

---

[12] Even if that additional level of detail were necessary, it is readily apparent from the record. *See Christian Fellowship*, 2001 ME 16, ¶ 19, 769 A.2d at 840 (allowing resort to the record to determine the basis for a municipality's decision, if that basis is "obvious or easily inferred" from the record). Here, the Planning Board's assessment of the proposed roadways largely tracks the analysis presented by Colcher's expert. *See* letter of Perry N. Moore dated January 22, 2003 (included in the record in notebook containing "Correspondence" at tab 5); March 20, 2003, Transcript at pp. 27-35. It is fair to infer that the Planning Board's conclusions regarding the proposed roadways were based substantially on that evidence.

13

and public ways. Parisi does not argue that the subdivision ordinance is inapplicable to the proposed development. Indeed, Parisi filed the preliminary plan pursuant to that municipal law. The ordinance then plainly holds that a "road" that is within a proposed subdivision must meet the requirements that the Planning Board considered here.

## E. Rejection of requested waivers

Parisi appears to advance three distinct arguments arising from the Planning Board's decision to deny two of his three requests for waivers of provisions of the ordinance (namely, waivers of the lot size requirement set out in section 2.6, and of the portion of section 3.3(B)(6) governing minimum width for rights of way). Parisi contends that the Planning Board did not issue written findings to explain its denial of these two waiver requests, that the denials were not supported by the evidence in the case,[13] and that the denial of the waiver requests was arbitrary and capricious when viewed in the context of the prior municipal proceedings.[14]

Similar to the previous discussion of other issues in this case, the court need only consider Parisi's waiver arguments as they relate to the proposed roads. The rejected waiver request addressed here by Parisi applies to only one of the fifteen requirements that the preliminary plan failed to satisfy (seven of which, in the Planning Board's view, involved design features that affirmatively would violate the ordinance's requirements, in distinction to the remaining eight factors on which the Planning Board simply could not determine compliance due to lack of sufficient information). Therefore, even if Parisi is correct in concluding that that the Planning Board erred when it denied the single remaining roadway-related waiver, any such error would be immaterial because there exist independent grounds on which the Planning Board based its ultimate decision.

## F. Other arguments

---

[13]This argument is integrated into Parisi's claim in count 1 that the Planning Board applied too rigorous a standard of analysis to the preliminary plan application.

[14] In substance, this final contention is based in part on an argument that the members of the Planning Board were predisposed toward denying Parisi's waiver requests. Parisi argues, for example, that prior to the Planning Board's decision, he "had heard" that the Planning Board would not grant the waivers and that the waivers were denied without explanation, thus indicating an absence of fair consideration. This aspect of Parisi's claim is tantamount to an argument of bias, which the court considers and rejects elsewhere in this order.

14

In count 3, Parisi appears to assert the arguments that the decision of the Planning Board should be vacated because it failed to follow the schedule it established for the review process. Even if Parisi preserved this issue for appellate review by expressing objections to any changes to a schedule, there is no persuasive argument that modifications of the process schedule would warrant the relief that Parisi seeks here.

Also as part of count 3, Parisi argues that the Planning Board was barred from denying the preliminary plan application due to any insufficiency of information, because the Planning Board had accepted the application as complete. Section 6.2 of the subdivision ordinance specifies the contents of a preliminary plan application. Within 30 days of that filing, the Planning Board is required to advise the applicant that the application is complete or, if not, the nature of additional material that the applicant is required to file. *See* Ordinance at § 6.1(E). A communication, such as the one made here, that an application is complete cannot reasonably be regarded as more than an assertion that the applicant has filed the submissions required by section 6.2. The role of the Planning Board is then to evaluate the information contained in the required submissions, as well as any additional data in supplemental filings, to determine if the proposal meets the standards of the ordinance. To effect more than a near ministerial review to account for submissions required in section 6.1 (as Parisi contends here), the Board would be required to examine the substantive contents of documents, which can be voluminous and complex, to inquire whether somewhere in that collection of materials, each substantive element of the ordinance has been addressed. The court concludes that the better understanding of a "complete" application is one that includes the documents and other material identified in section 6.2. The adequacy of the information in those submissions is a matter better and more properly addressed to a plenary hearing, where the proponents and opponents of a project have the opportunity to be heard on matters such as the extent to which the proposal meets the standards set out in the ordinance. During the adjudicative process, the Planning Board was entitled to find that the preliminary plan application included design elements that in fact did not meet the required standards. Thus, the Planning Board's separate findings of insufficiencies were not determinative of the ultimate outcome. Nonetheless, if the Planning Board's

15

insufficiency findings are consequential, the Planning Board was entitled to issue such findings even though it deemed Parisi's preliminary plan application to be complete.

Next, both Parisi and Colcher offer arguments on the issue of whether the proposed development falls within the scope of section 2.6(A) (single family residential lots) or section 2.6(B) (multi-family, lodging units) of the ordinance. Both types of developments are subject to the same design requirements established elsewhere in the subdivision ordinance. For the reasons noted above, the court concludes that the record supports the Planning Board's decision to deny the preliminary plan application because it did not satisfy some of those design requirements. Therefore, the characterization of the development under section 2.6(A) or section 2.6(B) is immaterial: either way, the Planning Board's decision was one it was entitled to render. Therefore, the court need not and does not address this issue. Similarly, the court need not and does not address other issues regarding the basis for the Planning Board's decision, because those contentions would not entitle Parisi to relief.

The court notes finally that in AP-04-3, although the issue has not been raised by the participating parties, there may be a significant question of whether this court has jurisdiction over an order issued by a municipal body that remanded the matter to a lower municipal body for further substantive proceedings. When a municipal body remands a decision issued by a lower municipal body for further municipal action, the order of remand generally does not amount to a final judgment that would support an appeal to a court. *See Rockland Plaza Realty v. City of Rockland*, 2001 ME 81, ¶¶ 6, 25-37 (Alexander, J., dissenting), 772 A.2d 256, 258-59, 262-266; *see also Malonson v. Town of Berwick*, 2003 ME 148, ¶ 2, 838 A.2d 338, 338 (absent an exception to the final judgment rule, aSuperior Court order remanding case for further municipal proceedings is not a final judgment from which a party may appeal directly to the Law Court). Thus, Colcher's appeal in AP-04-3 may be premature. However, because the single issue in that case is moot due to the affirmance of the Planning Board's decision, the court need not and does not address this jurisdictional issue.

The entry shall be:

16

For the foregoing reasons, in AP-03-22, the decision of the Town of Deer Isle Planning Board is affirmed. Colcher's motion to strike is granted: materials filed by Parisi as part of the reply brief that are not part of the record on appeal are stricken.

In AP-04-3, the appeal is dismissed as moot.

Dated: November 2, 2004

_____
Justice, Maine Superior Court

**FILED & ENTERED**

NOV 0 4 2004

**SUPERIOR COURT HANCOCK COUNTY**